1   Jeffrey T. Sprung, WSBA #23607
    Martha Rodríguez López, WSBA #35466
2   Zachary P. Jones, WSBA #44557
    Jeffrey C. Grant, WSBA #11046
3   R. July Simpson, WSBA #45869
    *Assistant Attorneys General*
4   ROBERT W. FERGUSON
    ATTORNEY GENERAL
5   Washington Attorney General's Office
    800 Fifth Avenue, Suite 2000
6   Seattle, WA 98104
    (206) 464-7744
7
8                **UNITED STATES DISTRICT COURT**
             **EASTERN DISTRICT OF WASHINGTON**
9                        **AT SPOKANE**

10  STATE OF WASHINGTON,              NO. 2:19-cv-00183

11                 Plaintiff,         COMPLAINT FOR
                                      DECLARATORY AND
12           v.                       INJUNCTIVE RELIEF

13  ALEX M. AZAR II, in his official
    capacity as Secretary of the United
14  States Department of Health and
    Human Services; and UNITED
15  STATES DEPARTMENT OF
    HEALTH AND HUMAN
16  SERVICES,

17                 Defendants.

18

19

20

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ..................................................................... 1

3    II.    PARTIES ................................................................................. 4

4    III.    JURISDICTION AND VENUE ............................................... 5

5    IV.    RELEVANT FACTS ............................................................... 6

6        A.  Federal Statutory and Regulatory Background ............................ 6

7            1.  Federal laws that protect patients and assure access to
                modern health care ................................................................ 6

8

9                a.   The Patient Protection and Affordable Care Act's
                     contraceptive coverage requirement .................................. 6

10               b.   The Emergency Medical Treatment and Labor Act ......... 7

11               c.   The mandate for non-directive pregnancy counseling in
                     the appropriations acts applicable to the Title X family
12                   planning program ............................................................. 8

13               d.   The ACA bars HHS regulations that deny patients timely
                     access to medical care, interfere with provider-patient
14                   communications, or undermine informed consent or
                     medical ethics ................................................................ 10

15

16           2.  Federal refusal laws that protect conscience-based objections
                to providing certain health care services .............................. 12

17               a.   The Church Amendments ............................................... 12

18               b.   The Coats-Snowe Amendment ....................................... 13

19               c.   The Weldon Amendment ............................................... 13

20               d.   Refusal rights in the ACA ............................................. 14

21               e.   Other federal statutory refusal rights .............................. 14

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

B.  Washington Laws Guaranteeing Timely Access to Health Care and Respecting Conscience-Based Refusal Rights .................... 15

    1.  Washington's statutory conscience protection statute .......... 15

    2.  The Reproductive Privacy Act, Wash. Rev. Code 9.02.100, *et seq.* .................................................................................... 17

    3.  The Reproductive Parity Act, Wash. Rev. Code 48.43.072–.073 ................................................................................... 18

    4.  Informed consent, Wash. Rev. Code 7.70.050–.060 ........... 21

    5.  Regulation of pharmacies' responsibilities, Wash. Admin Code 246-869-010 ................................................................ 24

    6.  Washington Charity Care Law, Wash. Rev. Code 70.170.060 ......................................................................... 26

    7.  Emergency contraception for sexual assault victims, Wash. Rev. Code 70.41.350 .......................................................... 27

    8.  Duty to comply with advanced directives, Wash. Rev. Code 70.122.030 ................................................................... 27

    9.  Information concerning end-of-life care options, Wash. Rev. Code 70.245 ................................................................. 28

    10. Services for LGBTQ individuals .......................................... 30

    11. Patient abandonment .............................................................. 31

C.  HHS's 2019 Final Rule ................................................................ 33

    1.  Background ............................................................................ 33

    2.  Definitions section ............................................................... 35

       a.  "Assist in the performance" ........................................... 35

       b.  "Discriminate" or "discrimination" ................................ 37

       c.  "Entity" and "health care entity" .................................... 38

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

          d.   "Health service program" ................................................. 39

          e.   "Referral" or "refer for" .................................................. 40

       3.   Assurance and certification .................................................... 40

       4.   Compliance and enforcement ................................................ 40

       5.   Preemption ........................................................................ 41

    D.   The Final Rule's Impact on Washington .................................... 42

       1.   Abrogation of Washington's laws protecting patients ......... 42

       2.   Denied or delayed health care to Washingtonians .............. 43

       3.   Impact on state health care institutions ................................ 45

       4.   Financial injury to Washington ........................................... 46

V.   CLAIMS FOR RELIEF .................................................................... 49

VI.   PRAYER FOR RELIEF .................................................................... 58

COMPLAINT FOR
DECLARATORY AND
INJUNCTION RELIEF

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## I.    INTRODUCTION

1.    The State of Washington seeks to enjoin and set aside the U.S. Department of Health and Human Service's (HHS) May 21, 2019 Final Rule,[1] which imposes the religious views of officials at HHS on Washingtonians and individuals across the country who seek timely, medically necessary care and information about reproductive health, LGBTQ health, and end-of-life care. Echoing these views, at a Rose Garden ceremony touting the release of the rule, President Trump said: "Together we are building a culture that cherishes the dignity and worth of human life. Every child, born and unborn is a sacred gift from God."[2]

2.    Washington law reflects a long tradition of respecting the religious beliefs of its citizens. At the same time, its laws have struck a balance so that no one's religious views are imposed unwillingly on another. Therefore, Washington's laws require that no health care provider's conscience-based refusal results in the denial of timely access to information and services required by prevailing medical and ethical standards.

---

[1] *Protecting Statutory Conscience Rights in Health Care; Delegations of Authority*, 84 Fed. Reg. 23170 (May 21, 2019) (Final Rule), *see infra* at 33 n.6.

[2] https://www.whitehouse.gov/briefings-statements/remarks-president-trump-national-day-prayer-service/, *see infra* at 33 n.5.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1      3.      The Final Rule tramples Washington's careful balance of rights and

2    interests. Instead, it imposes its absolute position on the State, its health care

3    institutions, and its residents. In the Final Rule, HHS misinterprets several federal

4    statutes to create a categorical, absolute right by health care providers or their

5    employees to deny medical information and care solely on the basis of their

6    religious or moral tenets, even when required by the corresponding medical

7    standard of care. HHS's expansive new refusal right applies to *any* employee of

8    a covered institution and extends its protections to non-health care providers like

9    insurers and employers.

10     4.      HHS assumes the power to impose its religious values on the most

11    sensitive health decisions and relationships, purporting to preempt longstanding

12    Washington laws protecting patients' rights. Under the Final Rule, an emergency

13    room may refuse to provide emergency contraception to a victim of a violent

14    sexual assault. An institution at which a pregnant women discovers that her fetus

15    is anencephalic—developing without the major structures of the brain—may

16    refuse counseling on all medically indicated options. A religious provider treating

17    a patient suffering from a painful, terminal illness who desires to use the

18    Washington Death With Dignity Act may refuse to transfer medical records to a

19    non-objecting provider. A hospital scheduler or a health insurer's telephone

20    representative could assert a moral objection to assisting gay or transgender

21    individuals seeking medical care.

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

2

5.      HHS's legal interpretation violates numerous statutory limits on its authority. In the Patient Protection and Affordable Care Act, the Emergency Medical Treatment and Labor Act, and annual appropriations acts for the Title X family planning program, Congress created national standards for certain health care and health insurance coverage. The Final Rule disregards those standards. Further, in a section of the ACA addressing HHS's rulemaking authority, Congress barred HHS from adopting regulations that impede access to health care information or services, violate principles of informed consent, or undercut the ethical standards of health care professionals. The Final Rule oversteps all of these restrictions. And HHS interprets the statutory provisions that are the subject of the Final Rule so broadly as to defy Congress's clear intent, assertedly preempting state laws on the books for decades.

6.      Furthermore, in violation of statutory and constitutional limits, HHS attempts to coerce Washington's compliance with the Final Rule by subjecting it to the risk of the loss of *all* federal health care funds—over $10 billion per year— if the State, its health care institutions, or its subrecipients violate the Final Rule. The Final Rule puts Washington to the Hobson's choice between enforcing its patient protection and civil rights laws and jeopardizing the federal funds that supports its Medicaid and children's health insurance programs.

7.      In placing its thumb on the scales to favor religious views at the expense of patients' guaranteed access to timely and complete health information

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

3

1   and care, HHS harms the most vulnerable Washingtonians. In rural areas in

2   eastern Washington, patients seeking urgent reproductive care, end-of-life

3   assistance, or gender-affirming surgery or treatment may be forced to travel

4   hundreds of miles for care. By imposing an absolute duty on health care providers

5   to accommodate the religious objections of any employee to providing *any*

6   service to *any* patient, the Final Rule invites and sanctions discrimination against

7   patients based on their sexual orientation or gender identity. Affluent patients will

8   nevertheless access care that is consistent with principles of informed consent,

9   but many rural patients and the working poor will be hostage to the particular

10  religious views of their health care providers.

11      8.   The Administrative Procedure Act (APA), 5 U.S.C. § 706(2),

12  empowers the Court to enjoin and set aside agency action that is contrary to

13  constitutional right or in excess of statutory authority, or is arbitrary, capricious,

14  an abuse of discretion, or otherwise not in accordance with law. To avert

15  irreparable injury to the State and its residents, Washington brings this suit to

16  declare unlawful and enjoin the Final Rule.

17                          **II.    PARTIES**

18      9.   Plaintiff the State of Washington is represented by its Attorney

19  General, who is the State's chief legal adviser. The powers and duties of the

20  Attorney General include acting in federal court on matters of public concern to

21  the State.

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTION RELIEF

4

1      10. Washington is directly affected by the Final Rule. Washington

2    brings this action to redress harms to its sovereign, proprietary, and

3    quasi-sovereign interests and its interests as *parens patriae* in protecting the

4    health and well-being of its residents.

5      11. Washington and its residents will suffer significant and

6    irreparable harm if the Final Rule goes into effect.

7      12. Defendant Alex M. Azar II is the Secretary of HHS (the

8    Secretary). He is sued in his official capacity.

9      13. Defendant HHS is the federal agency responsible for

10    implementing the Final Rule. HHS promulgated the Final Rule challenged in

11    this lawsuit. HHS's sub-agency, the Office of Civil Rights (OCR), administers

12    regulations created by the Final Rule.

13       **III. JURISDICTION AND VENUE**

14      14. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action

15    arising under the laws of the United States), 28 U.S.C. § 1346 (United States as

16    a defendant), and 5 U.S.C. §§ 701–706 (APA). An actual controversy exists

17    between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court

18    may grant declaratory relief, injunctive relief, and other relief pursuant to 28

19    U.S.C. §§ 2201–2202 and 5 U.S.C. §§ 705–706.

20

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

15.    Defendants' publication of the Final Rule in the Federal Register on May 21, 2019, constitutes a final agency action and is therefore judicially reviewable within the meaning of the APA. 5 U.S.C. §§ 704, 706.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is a judicial district in which the State of Washington resides and this action seeks relief against federal agencies and officials acting in their official capacities. *See California v. Azar*, 911 F.3d 558, 569–70 (9th Cir. 2018).

## IV.    RELEVANT FACTS

### A.    Federal Statutory and Regulatory Background

17.    Congress has enacted into law both affirmative requirements to ensure Americans' access to modern and effective health care and conscience protections for health care providers who refuse to perform certain services.

#### 1.    Federal laws that protect patients and assure access to modern health care

##### a.    The Patient Protection and Affordable Care Act's contraceptive coverage requirement

18.    In 2010, Congress enacted the Patient Protection and Affordable Care Act (Pub. L. No. 111-148) and the Health Care and Education Reconciliation Act of 2010 (Pub. L. No. 111-152) (collectively, the ACA). The ACA imposes an obligation on insurers to provide contraceptive coverage. 42 U.S.C. § 300gg-13(a)(4).

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

19.    A limited exemption from the contraceptive coverage mandate exists for religious employers (defined as "churches, their integrated auxiliaries, and conventions or associations of churches," and "the exclusively religious activities of any religious order" that are organized and operate as nonprofit entities). In addition, for certain non-exempt employers with religious beliefs that conflict with the use of contraceptives, federal law contains an accommodation. This accommodation is intended to ensure, in the words of the Supreme Court, that eligible non-church organizations can follow "an approach going forward that accommodates [their] religious exercise while at the same time *ensuring that women covered by [their] health plans 'receive full and equal health coverage, including contraceptive coverage.'* " *Zubik v. Burwell*, 136 S. Ct. 1557, 1559 (2016) (per curiam) (emphasis added).

20.    Eight courts of appeals have concluded that requiring religious objectors to notify the government of their objection to providing contraceptive coverage, so that the government can ensure that the responsible insurer or third-party administrator steps in to meet the ACA's requirements, does not impose a substantial burden on religious exercise.

### b.    The Emergency Medical Treatment and Labor Act

21.    In 1986, Congress enacted the Emergency Medical Treatment and Labor Act (EMTALA) to ensure public access to emergency services regardless of a patient's ability to pay. 42 U.S.C. § 1395dd.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1          22.    Under EMTALA, a hospital must provide patients with a medical

2     screening examination and, if the patient has an "emergency medical condition,"

3     provide stabilizing treatment or execute an appropriate transfer. 42 U.S.C.

4     § 1395dd; 42 C.F.R § 489.24. The term "emergency medical condition" includes

5     "a medical condition manifesting itself by acute symptoms of sufficient severity

6     (including severe pain) such that the absence of immediate medical attention

7     could reasonably be expected to result in placing the health of the individual (or,

8     with respect to a pregnant woman, the health of the woman or her unborn child)

9     in serious jeopardy . . . ." 42 U.S.C. § 1395dd(e)(1).

10         23.    Hospitals and physicians violating EMTALA are subject to civil

11     monetary penalties and the threat of Medicare decertification. 42 U.S.C.

12     § 1395dd(d).

13              **c.    The mandate for non-directive pregnancy counseling in
                        the appropriations acts applicable to the Title X family
14                      planning program**

15         24.    In 1970, Congress enacted the Family Planning Services and

16     Population Research Act of 1970, 42 U.S.C. § 300, *et seq.*, which added Title X

17     to the Public Health Service Act. Title X seeks to help low-income women reduce

18     their rate of unintended pregnancies and exercise control over their economic

19     lives and health by offering federally-funded access to effective contraception

20     and reproductive health care. The statute requires the HHS Secretary to award

21     grants to state or local governments and non-profit organizations for the

22

COMPLAINT FOR                              8            ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                              Complex Litigation Division
INJUNCTIVE RELIEF                                           800 Fifth Avenue. Suite 2000
                                                            Seattle, WA  98104-3188
                                                                (206) 464-7744

1    "establishment and operation of voluntary family planning projects" to provide

2    contraception and other reproductive health care, with priority given to persons

3    from low-income households. 42 U.S.C. §§ 300(a), 300(b), 300a-4(c)(1).

4        25.    Since 1996, Congress has passed annual appropriations acts

5    applicable to HHS requiring that all pregnancy counseling within a Title X

6    program *must* be nondirective.[3] Under this non-directive mandate, all recipients

7    of Title X grant funds must ensure that patients determined to be pregnant receive

8    "information on all available options without promoting, advocating, or

9    encouraging one option over another." 83 Fed. Reg. 25512, n.41 (Jun. 1, 2018).

10

11    _____

12        [3] *See* Pub. L. No. 115-245 (Sept. 28, 2018); Pub. L. No. 115-141 (Mar. 23,

13    2018); Pub. L. No. 115-31 (May 5, 2017); Pub. L. No. 114-113 (Dec. 18, 2015);

14    Pub. L. No. 113-76 (Jan. 17, 2014); Pub. L. No. 113-235 (Dec. 16, 2014); Pub.

15    L. No. 112-74 (Dec. 23, 2011); Pub. L. No. 111-117 (Dec. 16, 2009); Pub. L. No.

16    111-8 (Mar. 11, 2009); Pub. L. No. 111-322 (Dec. 22, 2010); Pub. L. No. 110-161

17    (Dec. 26, 2007); Pub. L. No. 109-149 (Dec. 30, 2005); Pub. L. No. 108-199

18    (Jan. 23, 2004); Pub. L. No. 108-7 (Feb. 20, 2003); Pub. L. No. 108-447 (Dec. 8,

19    2004); Pub. L. No. 107-116 (Jan. 10, 2002); Pub. L. No. 106-554 (Dec. 21, 2000);

20    Pub. L. No. 106-113 (Nov. 29, 1999); Pub. L. No. 105-78 (Nov. 13, 1997); Pub.

21    L. No. 105-277 (Oct. 21, 1998); Pub. L. No. 104-134 (Apr. 26, 1996); Pub. L.

22    No. 104-208 (Sept. 30, 1996).

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

9

1    26.    Congress's non-directive mandate requires that pregnant Title X

2    patients receive information on abortion upon request. HHS explicitly adopted

3    recommendations made by the American College of Obstetricians and

4    Gynecologists and the American Academy of Pediatrics stating that "[i]f the

5    patient indicates that the pregnancy is unwanted, she should be fully informed in

6    a balanced manner about all options, including raising the child herself, placing

7    the child for adoption, and abortion." American Academy of Pediatrics & The

8    American College of Obstetricians & Gynecologists (ACOG), Guidelines for

9    Perinatal Care, p. 127 (7th ed. 2016).[4] Congress did not create a conscience-based

10    right for the voluntary applicants for Title X grants to refuse to comply with the

11    non-directive mandate.

12        **d.    The ACA bars HHS regulations that deny patients
              timely access to medical care, interfere with
13            provider-patient communications, or undermine
              informed consent or medical ethics**
14

15    27.    In passing the ACA in 2010, Congress enacted a statutory section

16    that preserves the sanctity and integrity of the patient-provider relationship by

17    prohibiting interference by federal regulators. Section 1554 bars HHS from

18    _____

19    [4] *See Providing Quality Family Planning Services: Recommendations of*

20    *CDC and the U.S. Office of Population Affairs*, Morbidity and Mortality Weekly

21    Report Vol. 63, No. 4 (April 25, 2014), *available at* https://www.cdc.gov

22    /mmwr/pdf/rr/rr6304.pdf (last accessed January 2, 2019).

COMPLAINT FOR                          10                ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                                Complex Litigation Division
INJUNCTIVE RELIEF                                              800 Fifth Avenue. Suite 2000
                                                              Seattle, WA 98104-3188
                                                                   (206) 464-7744

1    adopting any regulations that impede patients' access to medical information and

2    quality care. Section 1554 provides that the Secretary of HHS "shall not

3    promulgate any regulation" that, *inter alia*:

      1.     creates any unreasonable barriers to the ability of individuals
           to obtain appropriate medical care;

      2.     impedes timely access to health care services;

      3.     interferes with communications regarding a full range of
           treatment options between the patient and the provider;

      4.     restricts the ability of health care providers to provide full
           disclosure of all relevant information to patients making
           health care decisions; or

      5.     violates the principles of informed consent and the ethical
           standards of health care professionals.

42 U.S.C. § 18114.

      28.    In addition to federal health care laws that balance conscience rights

with Americans' right to timely and modern health care, federal civil rights laws

balance the protection of religious beliefs against employers' needs to manage

their business affairs. Title VII of the Civil Rights Act of 1964 prohibits

discrimination in employment based on religious beliefs. 42 U.S.C. § 2000e-2(a).

It also provides that employers are not obligated to accommodate employees'

religious beliefs where they would cause "undue hardship" on the employer's

business. 42 U.S.C. § 2000e(j). Freedom of religion "gives no one the right to

insist that in pursuit of their own interests others must conform their conduct to

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

11

1    his own religious necessities." *Otten v. Baltimore & O.R. Co.*, 205 F.2d 58, 61

2    (2d Cir. 1953).

3        29.    HHS expressly declined to incorporate an assessment of undue

4    burden on employers in its categorical protection of conscience rights. 84 Fed.

5    Reg. 23191 (May 21, 2019). The Final Rule fails to address how HHS will

6    determine if Washington's health care institutions engaged in "discrimination"

7    where an employee's absolute right to refuse information and care on conscience

8    grounds conflicts with Title VII's balancing test.

9        **2.    Federal refusal laws that protect conscience-based objections
            to providing certain health care services**

10

11       **a.    The Church Amendments**

12       30.    Under the Church Amendments, entities that receive certain federal

13   funds cannot require that individuals perform or assist in performing any

14   sterilization procedure, abortion, or other health care programs or research if

15   doing so would be contrary to religious beliefs or moral convictions. Entities

16   cannot be required to make their facilities available for any sterilization

17   procedure or abortion if the procedure is prohibited based on the entity's religious

18   beliefs or moral convictions.

19       31.    Entities that receive certain federal funds (including those who

20   receive HHS grants or contracts for biomedical or behavioral research) cannot

21   discriminate in employment, promotion, termination, or the extension of staff or

22   other privileges because a provider performed or assisted in the performance of

COMPLAINT FOR                              12                    ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                                       Complex Litigation Division
                                                                      800 Fifth Avenue. Suite 2000
INJUNCTIVE RELIEF                                                     Seattle, WA  98104-3188
                                                                          (206) 464-7744

1    a lawful sterilization procedure or abortion—or refused to do so based on

2    religious beliefs or moral convictions.

3        32.    There are similar protections for those who apply to health care

4    training or study programs, including internships and residencies. Individuals

5    cannot be denied admission or discriminated against based on their willingness

6    or unwillingness to counsel, suggest, recommend, assist, or participate in

7    performing an abortion or sterilization if doing so is contrary to their religious

8    beliefs or moral convictions.

9                    **b.    The Coats-Snowe Amendment**

10       33.    The Coats-Snowe Amendment prohibits government entities that

11   receive federal financial assistance from discriminating against health care

12   entities (including physicians and those in health professional training programs)

13   that refuse to undergo training to perform abortions, refuse to provide referrals

14   for abortions or abortion training, or refuse to make arrangements for those

15   activities. Discrimination could occur if, for instance, the government denied an

16   entity a license to operate or refused financial assistance, services, or other

17   benefits. This amendment also applies to the accreditation of postgraduate

18   physician training programs.

19                    **c.    The Weldon Amendment**

20       34.    The Weldon Amendment has been included in annual

21   appropriations acts since 2004 and restricts the use of federal funds provided

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

13

1    through the Departments of Labor and HHS appropriations bill. The Weldon

2    Amendment prohibits government entities from using these funds to discriminate

3    against health care entities because they do not provide, pay for, cover, or refer

4    for abortions. There are similar appropriations laws that prohibit HHS from

5    barring a provider-sponsored organization from participating in Medicare

6    Advantage because it will not provide, pay for, cover, or refer for abortions.

7                    **d.    Refusal rights in the ACA**

8            35.    The ACA included a number of health care conscience provisions.

9    Under Section 1303, health plans are not required to cover abortion services as

10   part of the essential health benefits package and cannot discriminate against

11   providers or facilities because of their unwillingness to provide, pay for, cover,

12   or refer for abortions. The individual mandate includes a religious conscience

13   exemption for members of a health care sharing ministry and organizations or

14   individuals that oppose insurance benefits for religious reasons. Section 1553 of

15   the ACA prohibits government entities that receive federal financial assistance

16   under the ACA from discriminating against an individual or health care entity

17   because of an objection to providing items or service related to assisted suicide.

18                  **e.    Other federal statutory refusal rights**

19           36.    Other federal health care conscience laws prohibit Medicare and

20   Medicaid providers, organizations, or employees—including hospitals, skilled

21   nursing facilities, hospice programs, Medicaid managed care organizations, and

22

COMPLAINT FOR                        14              ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                          Complex Litigation Division
INJUNCTIVE RELIEF                                         800 Fifth Avenue. Suite 2000
                                                         Seattle, WA  98104-3188
                                                              (206) 464-7744

1   Medicare Advantage plans—from being required to inform or counsel an

2   individual about a right to an item or service related to assisted suicide or advance

3   directives. Medicare Advantage plans and Medicaid managed care organizations

4   cannot be compelled to provide, reimburse for, or cover counseling or referrals

5   that they object to on moral or religious grounds.

6   **B.    Washington Laws Guaranteeing Timely Access to Health Care and Respecting Conscience-Based Refusal Rights**

7   **1.    Washington's statutory conscience protection statute**

8   37.    Washington's legislature has crafted a careful balance between

9   individuals' religious and moral beliefs and patients' rights to health care.

10   38.    Washington law states:

11   The legislature recognizes that every individual possesses a
12   fundamental right to exercise their religious beliefs and conscience.
     The legislature further recognizes that in developing public policy,
13   conflicting religious and moral beliefs must be respected. Therefore,
     while recognizing the right of conscientious objection to
14   participating in specific health services, the state shall also recognize
     the right of individuals enrolled with plans containing the basic
15   health plan services to receive the full range of services covered
     under the plan.

16   Wash. Rev. Code 48.43.065; *see also* Wash. Rev. Code 70.47.160.

17   39.    Consistent with this legislative goal, the conscience protection

18   statute clarifies that "[n]o individual health care provider, religiously sponsored

19   health carrier, or health care facility may be required by law or contract in any

20   circumstances to participate in the provision of or payment for a specific service

21   if they object to so doing for reason of conscience or religion." Wash. Rev. Code

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

48.43.065(2)(a). Nor are individuals or organizations with a religious or moral tenet "required to purchase [insurance] coverage for that service or services if they object to doing so for reason of conscience or religion." Wash. Rev. Code 48.43.065(2)(b); *see also* Wash. Rev. Code 70.47.160(2)(b). The statute also protects persons from discrimination "in employment or professional privileges" because they assert a conscience objection. Wash. Rev. Code 48.43.065(2)(a); *see also* Wash. Rev. Code 70.47.160(2)(a).

40.    While recognizing the right of conscientious objection to participating in specific health services, the statutes also recognize "the right of individuals enrolled with plans . . . to receive the full range of services covered under the plan." Wash. Rev. Code 48.43.065(1); *see also* Wash. Rev. Code 70.47.160(1). The exercise of conscience rights cannot deprive an individual of "coverage" or "timely access to" medical services. Wash. Rev. Code 48.43.065(3)(b); *see also* Wash. Rev. Code 70.47.160(3)(b).

41.    As discussed further, below, Washington public policy and health care statutes incorporate principles reflecting a recognition of conscience rights, while also respecting the rights of Washington residents to receive appropriate and fully informed medical care as required by federal law, state law, and longstanding medical standards and ethical rules.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

### 2. The Reproductive Privacy Act, Wash. Rev. Code 9.02.100, *et seq.*

2

42.     Washington's longstanding public policy supports women's access

3

to a full range of reproductive health care services, including abortion. In 1970,

4

three years before *Roe v. Wade*, 410 U.S. 113 (1973), Washington voters passed

5

Referendum 20, becoming the first state to legalize elective abortion through the

6

popular vote. Referendum 20 permitted abortions within the first four months of

7

pregnancy when performed by, or under the supervision of, a licensed physician.

8

Laws of 1970, 2d Ex. Sess., ch. 3, § 2. By the mid-1970s, the state was providing

9

public funding for abortions for indigent women, which it continued to do after

10

federal funding was eliminated.

11

43.     In 1991, Washingtonians again voted in favor of abortion rights,

12

adding detail and clarifying the proper role of the state. Laws of 1992, ch. 1,

13

§§ 1–13. Initiative 120, the Reproductive Privacy Act, declares that the "right of

14

privacy with respect to personal reproductive decisions" is a "fundamental right"

15

of each individual. Wash. Rev. Code 9.02.100. The Act prohibits the state from

16

discriminating against, denying, or interfering with a woman's "right to choose

17

to have an abortion prior to viability of the fetus, or to protect her life or health."

18

Wash. Rev. Code 9.02.100(4), .110. Any restriction on abortion is valid only if it

19

is medically necessary to protect the life or health of the woman, consistent with

20

established medical practice, and the least restrictive of all available alternatives.

21

Wash. Rev. Code 9.02.140.

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

17

1    44.    Washington has always respected the conscience rights of providers

2    who object to providing abortion services. The 1970 ballot measure legalizing

3    elective abortion provided that "[n]o hospital, physician, nurse, hospital

4    employee nor any other person shall be under any duty . . . to participate in a

5    termination of pregnancy if such hospital or person objects to such termination."

6    Laws of 1970, 2d Ex. Sess., ch. 3, § 3. The 1991 Reproductive Privacy Act

7    refined and replaced the language governing who may object, providing that

8    "[n]o person or private medical facility may be required by law or contract in any

9    circumstances to participate in the performance of an abortion if such person or

10    private medical facility objects to so doing." Wash. Rev. Code 9.02.150.

11    **3.    The Reproductive Parity Act, Wash. Rev. Code 48.43.072–.073**

12    45.    In 2018, the Washington Legislature passed, and the Governor

13    signed, SSB 6219 (codified as Wash. Rev. Code 48.43.072 and .073), entitled the

14    Reproductive Parity Act. The Reproductive Parity Act requires that health plans

15    provide contraceptive coverage, and that a health plan providing coverage for

16    maternity care or services also include coverage for equivalent abortion services.

17    In the Act, the Washington Legislature declared that:

18    •    Reproductive health care is the care necessary to support the
         reproductive system, the capability to reproduce, and the
19        freedom and services necessary to decide if, when, and how
         often to do so, which can include contraception, cancer and
20        disease screenings, abortion, preconception, maternity,
         prenatal, and postpartum care. This care is an essential part of
21        primary care for women and teens, and often reproductive
         health issues are the primary reason they seek routine medical
22        care;

COMPLAINT FOR                           18              ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                              Complex Litigation Division
INJUNCTIVE RELIEF                                           800 Fifth Avenue, Suite 2000
                                                            Seattle, WA  98104-3188
                                                                (206) 464-7744

- • Neither a woman's income level nor her type of insurance should prevent her from having access to a full range of reproductive health care, including contraception and abortion services;

- • Restrictions and barriers to health coverage for reproductive health care have a disproportionate impact on low-income women, women of color, immigrant women, and young women, and these women are often already disadvantaged in their access to the resources, information, and services necessary to prevent an unintended pregnancy or to carry a healthy pregnancy to term;

- • This state has a history of supporting and expanding timely access to comprehensive contraceptive access to prevent unintended pregnancy;

- • Nearly half of pregnancies in both the United States and Washington are unintended. [. . .]

- • Access to contraception has been directly connected to the economic success of women and the ability of women to participate in society equally.

Reproductive Parity Act, 2018 Wash. Sess. Laws, ch. 119 (SSB 6219).

46. Relevant here, the law has two parts. First, health plans issued or renewed after January 1, 2019 must provide coverage for all contraceptives approved by the federal Food and Drug Administration, voluntary sterilization procedures, and any services necessary to provide the contraceptives. Wash. Rev. Code 48.43.072(1). This coverage cannot be subject to cost sharing or a deductible, unless the health plan is part of a health savings account. Wash. Rev. Code 48.43.072(2)(a). Carriers cannot deny coverage because an enrollee changed a contraceptive method changed within a twelve-month period, and the

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   health plan cannot impose any restrictions or delays on the enrollee's ability to

2   receive this coverage. Wash. Rev. Code 48.43.072(3), (4). These benefits must

3   be offered to all enrollees, their enrolled spouses, and their enrolled dependents.

4   Wash. Rev. Code 48.43.072(5).

5       47.    Second, health plans issued or renewed after January 1, 2019, that

6   provide coverage for maternity care or services must "also provide a covered

7   person with substantially equivalent coverage to permit the abortion of a

8   pregnancy." Wash. Rev. Code 48.43.073(1).

9       48.    During public testimony on SSB 6219, opponents argued that the

10  bill would "violate the constitutionally protected rights of religious organizations

11  and individuals." Senate Bill Report, SSB 6219 at 5, *available at*

12  http://lawfilesext.leg.wa.gov/biennium/2017-18/Pdf/Bill%20Reports/Senate/

13  6219%20SBR%20WM%2018.pdf (last accessed May 23, 2019). Proponents

14  responded that the bill represented "a compromise . . . that protects religious

15  organizations but still protects women's reproductive health." *Id.* Those with

16  conscience or religious objections could still utilize the protections of Wash. Rev.

17  Code 48.43.065 to avoid purchasing services with which they hold a moral or

18  religious objection. Wash. House Health Care & Wellness Comm., Public Hrg.,

19  Feb. 7, 2018 at 33:12–39:30, *available at* https://www.tvw.org/watch

20  /?eventID=2018021058 (last accessed Apr. 17, 2019).

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

20

1    49.    The Insurance Commissioner has proposed new rules implementing

2    SSB 6219. Office of the Insurance Commissioner, *Health Plan Coverage of*

3    *Reprod. Healthcare and Contraception Stakeholder Draft*, Sept. 20, 2018,

4    *available at* https://www.insurance.wa.gov/sites/default/files/2018-09/2018-10-

5    stakeholder-draft.pdf (last accessed April 17, 2019). The proposed rules make

6    clear that SSB 6219 does not preclude someone from exercising their rights under

7    Wash. Rev. Code 48.43.065: "This subchapter does not diminish or affect any

8    rights or responsibilities provided under [Wash. Rev. Code] 48.43.065." *Id.* at 2.

9    **4.    Informed consent, Wash. Rev. Code 7.70.050–.060**

10    50.    Washington State also recognizes a patient's right to determine the

11    course of their own medical treatment. Under Washington law, providers are

12    under a non-delegable fiduciary duty to obtain a patient's informed consent

13    before engaging in a course of treatment. Wash. Rev. Code 7.70.050.

14    51.    Unless a patient has been provided all the information necessary to

15    make a knowledgeable decision regarding their medical care, the patient's

16    "consent" to the course of action taken by the health care provider is not

17    "informed." The broad categories of information that must be disclosed to the

18    patient include: (1) the nature, character and anticipated results of the treatment,

19    (2) material risks inherent in the proposed treatment, and the (3) alternative

20    courses of treatment and their attendant risks. Wash. Rev. Code 7.70.060(1).

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

21

1    52.    Consequently, if medical evidence establishes that there is an

2    alternative course of treatment, including nontreatment, the physician has a duty

3    to inform the patient of that alternative. *Archer v. Galbraith*, 18 Wash. App. 369,

4    379, 567 P.2d 1155 (1977).

5    53.    Washington hospitals also play a role in the informed consent

6    process. They must ensure the patient's right to be involved in all aspects of their

7    care including obtaining informed consent. Wash. Admin Code 246-330-125

8    (requiring that ambulatory surgical facilities provide their patients with a copy of

9    their rights which include, among other things, the right to "[b]e informed and

10    agree to their care."); Wash. Admin. Code 246-320-166(4)(c) (requiring hospitals

11    to include "consent documents" as part of a patient's medical records).

12    54.    Washington's informed consent statute is consistent with

13    longstanding medical standard of care principles and medical ethics. By way of

14    example, in the context of reproductive care, medical providers are ethically

15    required to provide a patient with "pertinent medical facts and recommendations

16    consistent with good medical practice." ACOG, Code of Professional Ethics,

17    *available    at*    https://www.acog.org/About-ACOG/ACOG-Departments/

18    Committees-and-Councils/Volunteer-Agreement/Code-of-Professional-Ethics-

19    of-the-American-College-of-Obstetricians-and-Gynecologists    (last    accessed

20    May 23, 2019); *see also* American Medical Association, AMA Code of Medical

21    Ethics    (2016)    *available    at*    https://www.ama-assn.org/sites/ama-assn.org/

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    files/corp/media-browser/code-of-medical-ethics-chapter-2.pdf (last accessed

2    May 23, 2019) (a provider that withholds medical information is in violation of

3    the medical code of ethics).

4        55.    To that end, medical providers counseling pregnant patients must

5    provide "complete, medically accurate and unbiased information and resources

6    for all of their pregnancy options," including prenatal care, abortion, and other

7    options for which the patient may want information. ACOG Executive Board,

8    Abortion Policy 2014 Statement Of Policy 1, *available at* https://www.acog.org/-

9    /media/Statements-of-Policy/Public/sop069.pdf (last accessed May 23, 2019);

10   *see also* ACOG, Comm. on Ethics, *Opinion No. 528, Adoption*, 119 Obstetrics &

11   Gynecology 1320, 1320 (2012), *available at* https://www.acog.org/Clinical-

12   Guidance-and-Publications/Committee-Opinions/Committee-on-Ethics/

13   Adoption (last accessed May 23, 2019) (reaffirmed in 2018). In order to be fully

14   informed, the discussion between the health care provider and the patient must

15   also take place in an environment free from personal bias, coercion, or undue

16   influence.

17       56.    Washington's informed consent statute does not conflict with

18   conscience principles. A medical provider does not have to participate in

19   procedures to which they object on moral or religious grounds, but, as a matter

20   of law, they have not obtained the requisite informed consent if they withhold

21   information related to those medical procedures from their patient.

22

COMPLAINT FOR                            23              ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                              Complex Litigation Division
                                                            800 Fifth Avenue. Suite 2000
INJUNCTIVE RELIEF                                            Seattle, WA  98104-3188
                                                                (206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**5.    Regulation of pharmacies' responsibilities, Wash. Admin Code 246-869-010**

57.    The practice of pharmacy in the state of Washington is regulated by the Washington Pharmacy Quality Assurance Commission pursuant to a comprehensive regulatory scheme that directs the Commission, among other responsibilities, to "[r]egulate the practice of pharmacy and enforce all laws placed under its jurisdiction" and "[p]romulgate rules for the dispensing, distribution, wholesaling, and manufacturing of drugs and devices and the practice of pharmacy for the protection and promotion of the public health, safety, and welfare." Wash. Rev. Code 18.64.005. The "practice of pharmacy" "includes the practice of and responsibility for: [i]nterpreting prescription orders [and] the compounding, dispensing, labeling, administering, and distributing of drugs and devices," in addition to information-sharing and monitoring responsibilities. Wash. Rev. Code 18.64.011(11).

58.    In January 2006, the predecessor to the Commission, the Washington Board of Pharmacy, became concerned with the lack of clear authority regarding destruction or confiscation of lawful prescriptions and refusals by pharmacists to dispense lawfully prescribed medications. Recognizing the importance of providing Washington patients timely access to all medications, the Board initiated a rulemaking process to address these issues. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1114 (9th Cir. 2009).

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1     59.    After considering a number of draft rules, the Board adopted two

2    rules by unanimous vote on April 12, 2007. The first rule, an amendment to

3    Wash. Admin. Code 246-863-095, governs pharmacists. Under this rule, a

4    pharmacist may be subject to professional discipline for destroying or refusing to

5    return an unfilled lawful prescription, violating a patient's privacy, or unlawfully

6    discriminating against, or intimidating or harassing a patient. The rule, however,

7    does not require an individual pharmacist to dispense medication in the face of a

8    personal objection.

9     60.    The second rule, Wash. Admin. Code 246-869-010, governs

10    pharmacies. It requires pharmacies "to deliver lawfully prescribed drugs or

11    devices to patients and to distribute drugs and devices approved by the U.S. Food

12    and Drug Administration for restricted distribution by pharmacies . . . in a timely

13    manner consistent with reasonable expectations for filling the prescription."

14    Wash. Admin Code 246-869-010(1). A pharmacy may substitute a

15    "therapeutically equivalent drug" or provide a "timely alternative for appropriate

16    therapy," but apart from certain necessary exceptions, a pharmacy is prohibited

17    from refusing to deliver a lawfully prescribed or approved medicine. Wash.

18    Admin. Code 246-869-010(1), (3), (4). A pharmacy is also prohibited from

19    destroying or refusing to return an unfilled lawful prescription, violating a

20    patient's privacy, unlawfully discriminating against, or intimidating or harassing

21    a patient. Wash. Admin Code 246-869-010(4).

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    61.    In the Concise Explanatory Statement accompanying the

2    regulations, the Board noted that it created a right of refusal for individual

3    pharmacists by allowing a pharmacy to accommodate a pharmacist who has a

4    religious or moral objection. A pharmacy may not refer a patient to another

5    pharmacy to avoid filling a prescription because the pharmacy has a duty to

6    deliver lawfully prescribed medications in a timely manner. A pharmacy may

7    accommodate a pharmacist's personal objections in any way the pharmacy deems

8    suitable, including having another pharmacist available in person or by

9    telephone.

10    **6.    Washington Charity Care Law, Wash. Rev. Code 70.170.060**

11    62.    Washington has enacted charity care legislation that requires

12    hospitals to provide free or discounted inpatient and outpatient care to low

13    income patients. Washington's law requires that hospitals and their staff provide

14    emergency care to patients regardless of their ability to pay. Wash. Rev. Code

15    70.170.060. Similar to the federal EMTALA, a patient in an emergency medical

16    condition or active labor cannot be transferred unless by patient request or

17    because the hospital has limited medical resources. Wash. Rev. Code

18    70.170.060(2). A transfer must follow reasonable procedures, which include but

19    are not limited to confirming that the receiving hospital accepts the transfer. *Id.*

20

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

26

1

2

### 7.    Emergency contraception for sexual assault victims, Wash. Rev. Code 70.41.350

63.    Emergency contraception prevents pregnancy, and is commonly used after a sexual assault. Washington law (Wash. Rev. Code 70.41.350) and the rules to enact it (Wash. Admin. Code 246-320-286) require all hospitals with emergency rooms to provide emergency contraception as a treatment option to any woman who seeks treatment as a result of a sexual assault.

64.    Hospitals providing emergency care to a victim of sexual assault must: (1) develop and implement policies and procedures regarding the provision of twenty-four-hour/seven-days per week emergency care to victims of sexual assault; (2) provide the victim of sexual assault with medically and factually accurate and unbiased written and oral information about emergency contraception; (3) orally inform each victim in a language she understands of her option to be provided emergency contraception at the hospital; and (4) immediately provide emergency contraception if the victim requests it, and if the emergency contraception is not medically contraindicated. Wash. Admin. Code 246.320.286.

### 8.    Duty to comply with advanced directives, Wash. Rev. Code 70.122.030

65.    Washington residents may execute a directive that requires health care providers to withhold or withdraw life-sustaining treatment if they are a terminal or semi-conscious condition. Wash. Rev. Code 70.122.030. These directives become a part of the patient's medical records and are forwarded to the

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   patient's health care facility. Under Washington law, no nurse, physician or other

2   health care provider can be required to participate in the withholding or

3   withdrawal of life sustaining treatment if they have an objection. Wash. Rev.

4   Code 70.122.060(2). When an attending physician or health care facility becomes

5   aware of a patient's advance directive, however, they *must* inform the patient of

6   any policy or practice that would preclude them from honoring the patient's

7   directive. Wash. Rev. Code 70.122.060(2).

8   **9.    Information concerning end-of-life care options, Wash. Rev.
        Code 70.245**

9

10   66.    Washington State recognizes that residents suffering a terminal

11   disease may make an informed decision to self-administer medication to end their

12   own life in a humane and dignified manner. The Washington Death with Dignity

13   Act, Initiative 1000 (DWDA), passed by popular vote on November 4, 2008 and

14   went into effect on March 5, 2009. Wash. Rev. Code 70.245. Under the DWDA,

15   terminally ill adults seeking to end their life may request lethal doses of

16   medication from medical and osteopathic physicians.

17   67.    The DWDA requires a patient to make two oral requests for life

18   ending medications, and that they submit a written request with specific

19   information which must be signed by two qualified witnesses. Wash. Rev. Code

20   70.245.030. Two physicians, a prescribing physician and a consulting physician,

21   must confirm the patient's terminal diagnosis, the patient's intent to end their life,

22   and the patient's capacity to make an informed decision. Wash. Rev. Code

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    70.245.070; *see also* Wash. Rev. Code 70.245.120. A patient must then wait

2    forty-eight hours before receiving life-ending medication, and must

3    self-administer the medication.

4        68.    The DWDA acknowledges the conscience rights of providers,

5    explicitly stating that providers are not required to "participate" in a patient's

6    request under the DWDA. Wash. Rev. Code 70.245.190. In addition, it allows

7    health care facilities to take adverse action against attending physicians,

8    consulting physicians and any individuals who perform a counseling function if

9    they participate in the DWDA despite knowing that the health care provider has

10   policies against providing DWDA services. Wash. Rev. Code 70.245.190(2)(b).

11   Among other things, a non-participating health care facility can terminate

12   privileges and employment. *Id.*

13       69.    The DWDA defines "participation" narrowly, however, and does

14   not permit sanctions if the counselor, attending physician or consulting physician

15   is simply providing information about the Washington DWDA, or providing a

16   referral to another physician upon a patient's request. Wash. Rev. Code

17   70.245.190(d). If a health care provider is unwilling to carry out the request, and

18   the patient transfers his or her care to a new health care provider, the non-

19   participating provider must transfer, upon request, a copy of the patient's relevant

20   medical records. *Id.*

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    **10. Services for LGBTQ individuals**

2    70. In 2019, the Washington Legislature passed, and the Governor

3 signed, 2SSB 5602, entitled "An Act relating to eliminating barriers to

4 reproductive health care for all." The Act resulted from a report submitted to the

5 Legislature on January 1, 2019. The report was generated in response to a

6 legislatively mandated review of barriers to reproductive health care. In response

7 to this report, the Legislature found that "Washingtonians who are transgender

8 and gender nonconforming have important reproductive health care

9 needs . . . [which] go unmet when, in the process of seeking care, transgender and

10 gender nonconforming people are stigmatized or are denied critical health

11 services because of their gender identity or expression." 2019 Wash. Sess. Laws,

12 ch. 399, § 1(3). Thus, the Legislature found that "all Washingtonians, regardless

13 of gender identity, should be free from discrimination in the provision of health

14 care services, health care plan coverage, and in access to publicly funded health

15 coverage." *Id.* § 1(6).

16    71. Relevant here, the Act prohibits programs regulated by the

17 Washington State Health Care Authority from discriminating based on gender

18 identity or expression. The Washington State Health Care Authority is the largest

19 health care purchaser in Washington and purchases health care for Washington

20 residents through Apple Health (Medicaid), the Public Employees Benefits

21 Board Program, and beginning in 2020, the School Employees Benefit Board

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Program. Specifically, the Act amends chapter 74.09 Wash. Rev. Code to provide

2    that: "In the provision of reproductive health care services through programs

3    under this chapter, the [Health Care Authority], managed care plans, and

4    providers that administer or deliver such services may not discriminate in the

5    delivery of a service provided through a program of the authority based on the

6    covered person's gender identity or expression." 2019 Wash. Sess. Laws, ch. 399,

7    § 2(1).

8        72.    The Act further clarifies that it shall be prohibited discrimination

9    under chapter 49.60 Wash. Rev. Code for the Health Care Authority or any

10   managed care plan delivering services purchased or contracted for by the

11   authority to make any "automatic initial denials of coverage for reproductive

12   health care services that are ordinarily or exclusively available to individuals of

13   one gender, based on the fact that the individual's gender assigned at birth, gender

14   identity, or gender otherwise recorded in one or more government-issued

15   documents, is different from the one to which such health services are ordinarily

16   or exclusively available." *Id.* § 2(2) and (3). The Act takes effect on July 28,

17   2019.

18       **11.   Patient abandonment**

19       73.    In 1942, the Washington Supreme Court established the rule on the

20   appropriate manner of a provider to withdraw patient care: "It is the general rule

21   that when a physician undertakes to treat a patient, it is his duty to continue to

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    devote his best attention to the case until either medical attention is no longer

2    needed, he is discharged by the patient, or he has given the patient reasonable

3    notice of his intention to cease to treat the patient, so that another physician may

4    be obtained." *Gray v. Davidson*, 15 Wash. 2d 257, 266–267, 130 P.2d 341 (1942).

5    Washington has incorporated these principles in a number of statutes and

6    regulations addressing the practice of medicine and the provision of medical

7    services. *E.g.*, Wash. Admin. Code 246-840-710 (abandoning a patient without

8    an appropriate transfer constitutes a violation of the standards of nursing conduct

9    and practice).

10        74.    The Washington State Medical Association acknowledges that

11    physicians may choose whom to serve pursuant to their conscience objection.

12    However, "other principles balance this prerogative with obligations to respect

13    patients and their ability to access available medical care. Therefore, a

14    conscientious objection should, under most circumstances, be accompanied by a

15    referral to another physician or health care facility." WSMA Policy

16    Compendium, *available at* https://wsma.org/WSMA/About/Policies/Policies

17    .aspx (last accessed May 23, 2019).

18

19

20

21

22

COMPLAINT FOR                                    32            ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                                Complex Litigation Division
INJUNCTIVE RELIEF                                              800 Fifth Avenue. Suite 2000
                                                              Seattle, WA  98104-3188
                                                              (206) 464-7744

1    **C.    HHS's 2019 Final Rule**

2    **1.    Background**

3    75.    On May 2, 2019, President Trump announced the finalization of the

4    rule in a Rose Garden speech during the National Day of Prayer Service.[5] Directly

5    after that announcement, President Trump said, "Together we are building a

6    culture that cherishes the dignity and worth of human life. Every child, born and

7    unborn is a sacred gift from God." That day, HHS published the text of the Final

8    Rule on its website.

9    76.    On May 21, 2019, HHS issued the Final Rule[6] to expand and

10   consolidate its Office of Civil Rights' (OCR) enforcement authority over nearly

11   —————————————

12   [5] Remarks by President Trump at the National Day of Prayer Service,

13   May 2, 2019, *available at* https://www.whitehouse.gov/briefings-statements

14   /remarks-president-trump-national-day-prayer-service/ (last accessed May 23,

15   2019).

16   [6] *Protecting Statutory Conscience Rights in Health Care; Delegations of*

17   *Authority*, 84 Fed. Reg. 23170 (May 21, 2019), *available at*

18   https://www.govinfo.gov/content/pkg/FR-2019-05-21/pdf/2019-09667.pdf?utm

19   _campaign=subscription%20mailing%20list&utm_source=federalregister.gov&

20   utm_medium=email (last accessed May 22, 2019). The PDF version of the Final

21   Rule on the Federal Register website, linked at note 1, erroneously dates it one

22   year prior, May 21, 2018. The version posted on the Federal Register website

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    thirty federal health care conscience laws, including three parts of the ACA.

2    These laws focus largely on abortion but some also address sterilization

3    procedures, health care counseling, physician-assisted suicide, and advance

4    directives, among other types of medical care.

5         77.    The Final Rule dramatically expands the reach of the federal statutes

6    it purports to interpret. It makes the refusal rights of individuals and institutions

7    absolute and categorical. It broadly allows providers to refuse to engage in health

8    care counseling, so that patients may not even know they are being denied

9    knowledge of their full range of options. It applies not just to health care

10    professionals but to any employee, so a clinic receptionist or a health insurer's

11    customer   representative   may   refuse   to   perform   their   normal   work

12    responsibilities. It also applies to non-health care providers such as insurance

13    companies and non-health employers. And States are required to police their

14    subrecipients' compliance with the Final Rule if they receive any federal funds,

15    so that an unknown violation of the rule by a recipient of a pass-through of HHS

16    financial assistance could result in the termination of the State's entire multi-

17    billion dollar federal Medicaid match.

18

19    _____

20    bears the correct date of May 21, 2019. *See* https://www.federalregister.gov/

21    documents/2019/05/21/2019-09667/protecting-statutory-conscience-rights-in-

22    health-care-delegations-of-authority (last accessed May 23, 2019).

COMPLAINT FOR                              34                    ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                                      Complex Litigation Division
INJUNCTIVE RELIEF                                                    800 Fifth Avenue. Suite 2000
                                                                    Seattle, WA  98104-3188
                                                                         (206) 464-7744

1    78.   The substantive provisions of the Final Rule attempt to track the

2    statutory language of the nearly thirty laws. However, the Rule defines many key

3    terms—such as "discrimination," "health care entity," and "referral"—in ways

4    that significantly broaden the prior application of these laws. The Final Rule now

5    applies to entities that include state governments, federally recognized tribes,

6    hospitals, skilled nursing facilities, home health care providers, doctor's offices,

7    front desk staff, insurance companies, ambulance providers, pharmacists,

8    pharmacies, and many non-health employers that offer insurance to their

9    employees.

10   **2.    Definitions section**

11   79.   The definitions section of the Final Rule includes a number of

12   changes to prior definitions, as well as newly defined terms.

13   **a.    "Assist in the performance"**

14   80.   The Church Amendments prohibit individuals from being forced to

15   perform or "assist in the performance" of procedures or health care services

16   involving abortion or sterilization that are contrary to their religious beliefs or

17   moral convictions. The Final Rule defines "assist in the performance" as taking

18   an action that has a specific, reasonable, and articulable connection to furthering

19   a procedure or part of a health service program or research activity undertaken

20   by or with another person or entity. This may include counseling, referral,

21

22

COMPLAINT FOR                                    35                    ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                                              Complex Litigation Division
                                                                              800 Fifth Avenue. Suite 2000
INJUNCTIVE RELIEF                                                             Seattle, WA  98104-3188
                                                                                  (206) 464-7744

1   training, or otherwise making arrangements for the procedure, program, or

2   research activity.

3        81.    This definition extends to non-medical staff (such as front desk

4   staff) and other segments of the health care workforce (such as ambulance

5   drivers). HHS states that a person preparing a room for an abortion or scheduling

6   an abortion could fall under the definition—as could driving a person to a hospital

7   or clinic with a ruptured ectopic pregnancy, where termination of the pregnancy

8   is a reasonable likelihood. Emergency medical technicians and paramedics may

9   claim protection under the rule.

10       82.    Two sections of this definitional section are dramatic in their

11  breadth. One purports to make options counseling completely discretionary for

12  providers and institutions with conscience-based objections, even if the options

13  are medically indicated for the patient's condition. HHS defines "assist in the

14  performance" to encompass medical counseling, including informing patients of

15  their available options under the applicable standard of care. Final Rule § 88.2.

16  Thus, the Final Rule makes advising patients of their options in light of their

17  medical condition optional for those who refuse on conscience grounds to "assist

18  in" particular treatment.

19       83.    Another section purports to allow providers and institutions to

20  interpose religious or moral refusals to services beyond abortion and sterilization,

21  the stated subjects of the Church Amendments, authorizing them to deny services

22

COMPLAINT FOR                                    36                ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                                        Complex Litigation Division
INJUNCTIVE RELIEF                                                       800 Fifth Avenue, Suite 2000
                                                                       Seattle, WA  98104-3188
                                                                           (206) 464-7744

1  to members of the LGBTQ community. *See* 42 U.S.C. § 300a-7 (entitled

2  "Sterilization or abortion"). The Final Rule prohibits discrimination against a

3  person assisting "in any lawful health service" who asserts a conscience-based

4  objection, Final Rule § 88.3(a)(2)(v), and prohibits covered entities from

5  requiring any objecting person to assist in the performance of "any part of a health

6  service program." *Id.* § 88.3(a)(2)(vi).

7              **b.**    **"Discriminate" or "discrimination"**

8       84.    The Final Rule includes a definition for "discriminate" or

9  "discrimination," which was previously undefined. HHS defines these terms to

10  include (1) withholding, reducing, excluding, terminating, restricting, or

11  otherwise making unavailable or denying any grant, contract, subcontract,

12  cooperative agreement, loan, license, certification, accreditation, employment,

13  title, or other similar instrument, position, status, benefit, or privilege or imposing

14  any penalty; and (2) using any criterion, method of administration, or site

15  selection (including the enactment, application, or enforcement of laws,

16  regulations, policies, or procedures directly or through contractual or other

17  arrangements) that subjects protected individuals or entities to any adverse

18  treatment.

19       85.    The Final Rule partially incorporates Title VII's approach to the

20  reasonable accommodation of religion—but without the "undue hardship"

21  exception. Entities will not have engaged in discrimination if they offer an

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

37

1    effective accommodation for the exercise of protected conduct, religious beliefs,

2    or moral convictions (assuming that offer is voluntarily accepted). Employers can

3    inform the public of the availability of alternate staff or methods but are not

4    required to do so and cannot single out staff if doing so would be retaliatory.

5         86.    Objecting employees can be required to disclose their objections to

6    the employer if there is a reasonable likelihood that they would be asked to take

7    this action.

8              c.    "Entity" and "health care entity"

9         87.    The Final Rule includes separate definitions for "entity" and "health

10    care entity" and, in doing so, expands the application of federal conscience laws

11    that refer to "entity." Under the predecessor rule, the definition for "entity" and

12    "health care entity" had been identical, limiting application of federal conscience

13    laws to health care entities (such as health care professionals).

14        88.    The definition of "entity" has been broadened to include "persons"

15    (individuals, corporations, companies, associations, firms, partnerships,

16    societies, and joint stock companies), states, political subdivisions, state

17    instrumentalities or political divisions, and any public agency, public institution,

18    public organization, or other public entity.

19        89.    Three of the statutes—the Weldon Amendment, the Coats-Snowe

20    Amendment, and Section 1553 of the ACA—use the term "health care entity."

21    For all three statutes, "health care entity" includes an individual physician or

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

38

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    other health care professional (including a pharmacist); health care personnel; a

2    participant in a health professions training program; an applicant for training or

3    study in the health professions; a post-graduate physician training program; a

4    hospital; a medical laboratory; an entity engaging in biomedical or behavioral

5    research; a pharmacy; any other health care provider or facility; and (potentially)

6    a component of state or local government. HHS added pharmacies and

7    pharmacists in the Final Rule.

8        90.   For purposes of the Weldon Amendment and Section 1553, a

9    "health care entity" additionally includes provider sponsored-organizations,

10    HMOs, issuers, group and individual health insurance plans, plan sponsors, and

11    third-party administrators. The inclusion of plan sponsors in the definition applies

12    to all employers that sponsor a group health plan even when they are not

13    otherwise a "health care entity."

14        **d.**    **"Health service program"**

15        91.   The Final Rule eliminated the definition of "health program or

16    activity" and refers only to "health service program." A health service program

17    includes any health or health-related services or research activities, benefits,

18    insurance coverage, studies, or any other service related to health or wellness.

19    The definition includes programs provided or administered directly, through

20    insurance, or through payments, grants, contracts, or other instruments.

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1          e.      **"Referral" or "refer for"**

2          92.    The Final Rule defines "referral" or "refer for" to include providing

3    information in oral, written, or electronic form (including names, addresses,

4    phone numbers, email or web addresses, directions, instructions, descriptions, or

5    other information resources) where the purpose or reasonably foreseeable

6    outcome of providing that information is to assist a person in receiving funding

7    or financing for, training in, obtaining, or performing a particular health care

8    service, program, activity, or procedure.

9          93.    Under this definition, an individual would not have to provide

10   contact information of a physician or clinic that may provide an abortion, tell a

11   patients that funding is available for abortion, or provide a phone number where

12   they can be referred to abortion services or funding.

13         **3.     Assurance and certification**

14         94.    Under the Final Rule, every application for federal funding from

15   HHS must include both an assurance and a certification that the applicant or

16   recipient will comply with applicable federal conscience laws. Final Rule

17   § 88.4(a).

18         **4.     Compliance and enforcement**

19         95.    HHS states that each recipient of HHS funds "has primary

20   responsibility to ensure that it is in compliance with" the Final Rule. Final Rule

21   § 88.6(a). Further, if HHS finds that a subrecipient of federal funds, such as a

22

COMPLAINT FOR                          40
DECLARATORY AND                                      Complex Litigation Division
INJUNCTIVE RELIEF                                    800 Fifth Avenue, Suite 2000
                                                     Seattle, WA  98104-3188
                                                     (206) 464-7744

1    clinic included in a state's federally subsidized Title X network, violated the Final

2    Rule, the state "may be subject to the imposition of funding restrictions or any

3    appropriate remedies available under this part . . . ." *Id.*

4        96.    OCR has discretion in choosing its means of enforcement, which

5    could range from informal resolution to more rigorous enforcement. In response

6    to a violation, OCR could terminate federal funds, withhold federal payments,

7    withhold new federal funds, suspend award activities, refer a matter to the

8    Department of Justice, or take other remedies.

9        **5.    Preemption**

10        97.    The Final Rule contains a provision that addresses preemption of

11    state laws. Final Rule § 88.8. This provision states that it does *not* preempt only

12    those state laws that are *equally or more protective of* religious freedom and

13    moral convictions. In contrast, HHS purports to preempt state laws, such as those

14    in Washington, that balance conscience objections with guarantees of patient

15    access to care. "To the extent State or local standards or laws conflict with the

16    Federal laws that are the subject of this rule, the Federal conscience and

17    antidiscrimination laws preempt such laws and standards . . . ." 48 Fed. Reg. at

18    23266.

19

20

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTION RELIEF

41

1    **D.    The Final Rule's Impact on Washington**

2        **1.    Abrogation of Washington's laws protecting patients**

3        98.    Washington has a sovereign interest in its "power to create and

4    enforce a legal code." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,

5    458 U.S. 592, 601 (1982); *see also Bowen v. Pub. Agencies Opposed to Soc. Sec.*

6    *Entrapment*, 477 U.S. 41, 51 n.17 (1986) (there is "no question" that states have

7    standing to sue to preserve their sovereignty where sovereign interests have been

8    interfered with or diminished).

9        99.    As reflected in numerous laws in Washington's legal code, the

10   Washington legislature has carefully balanced the right of individuals and

11   organization to refuse to provide health care services because of conscience

12   objections with Washingtonians' rights "to receive the full range of services"

13   covered under the state's health insurance plans." Wash. Rev. Code 48.43.065.

14   These laws include the Reproductive Privacy Act, Wash. Rev. Code 9.02.100, *et*

15   *seq*.; the Reproductive Parity Act, Wash. Rev. Code 48.43.072–.073;

16   Washington's Informed Consent statute, Wash. Rev. Code 7.7.050;

17   Washington's regulation governing pharmacies' responsibilities, Wash. Admin.

18   Code 246-869-010; its statute mandating emergency contraception for sexual

19   assault victims, Wash. Rev. Code 70.41.350; the duty to counsel on advanced

20   directives, Wash. Rev. Code 70.122.060(2); the duty to transfer medical records

21   of patients seeking end-of-life care, Wash. Rev. Code 70.245.190(d); the statute

22

1    prohibiting health care-related discrimination based on gender identity, 2019

2    Wash. Sess. Laws, ch. 399, § 2(1); and Washington's charity care law prohibiting

3    patient abandonment, among other laws. *See supra* at Section B.1.

4        100.    The Final Rule purports to preempt these Washington laws,

5    impeding Washington from enforcing its legal code. Under the Final Rule, HHS

6    could argue that Washington is barred from taking action against a hospital that

7    refused to provide emergency contraception to a victim of sexual assault. HHS

8    could assert that the State is powerless to enforce its regulations ensuring that

9    pharmacies fill a person's lawful prescription for contraception. It could impede

10    the Attorney General from acting under state civil rights laws against health care

11    providers who refused to provide medically indicated services to gay or

12    transgender patients because they had a moral objection to them. Further, it could

13    threaten Washington with the loss of over $10 billion in HHS funding if the State

14    did not acquiesce, forcing it to choose between its civil rights laws and its

15    Medicaid and children's health insurance programs.

16        **2.    Denied or delayed health care to Washingtonians**

17        101.    Washington has a quasi-sovereign interest in "ensuring that the State

18    and its residents are not excluded from the benefits that are to flow from

19    participation in the federal system." *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 608.

20    "[F]ederal statutes creating benefits . . . create interests that a State will obviously

21    wish to have accrue to its residents." *Id.* Washington's quasi-sovereign interests

22

COMPLAINT FOR                          43                ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                              Complex Litigation Division
                                                            800 Fifth Avenue, Suite 2000
INJUNCTIVE RELIEF                                            Seattle, WA  98104-3188
                                                                 (206) 464-7744

1    include "the health and well-being—both physical and economic—of its

2    residents in general," and "assuring the benefits of the federal system are not

3    denied to its general population." *Id.* at 607–08.

4        102.  The Final Rule will jeopardize the health of Washington residents

5    and cause injury to patients seeking medically indicated reproductive care,

6    sterilization, options counseling, emergency contraception, and other forms of

7    health care. Washingtonians will be denied their guaranteed rights to prompt

8    health care consistent with applicable medical and ethical standards because of

9    conscience-based refusals. These refusals could come not only from medical

10    professionals but from orderlies, cabulance drivers, appointment schedulers, or

11    insurance company telephone representatives.

12        103.  To illustrate the potential serious harm to Washington residents,

13    consider a hypothetical patient in Skagit County with a high-risk pregnancy who

14    regularly sees an OB/GYN high-risk specialist at the University of Washington.

15    Her OB/GYN determines that she is miscarrying and, under applicable standards

16    of care, she needs to be treated immediately to prevent infection, sepsis, and even

17    death. Washington law would prevent a hospital faced with a patient in an

18    emergency condition from refusing care and transferring the patient to a different

19    institution. Under the Final Rule, however, the nearest hospital could refuse to

20    admit her if it opposed pregnancy terminations on religious grounds, and it could

21    force the woman to be transported to Seattle for care.

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

44

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

104.  As another illustration, consider an elderly resident of Benton County terminally ill with aggressive, stage four liver cancer, who seeks to avoid a painful end to his long life. He consults with a physician at the only healthcare system near his rural home and makes a request for life-ending medications consistent with the DWDA. Under the DWDA, a non-participating provider must inform the patient that it does not provide services under the DWDA, and it must transfer his records to a new health care provider. Under the Final Rule, however, the institution does not need to inform the patient that it declines to participate in the DWDA, and it could delay or refuse his request to transfer his records to a participating provider. The patient could experience an avoidable, painful death without ever learning that the facility does not participate in the DWDA.

105.  Or, alternatively, consider a college student who is a victim of a violent sexual assault. She is transported to a hospital emergency room, and she requests the morning after pill. Washington law requires the hospital to immediately provide her emergency contraception. Under the Final Rule, however, the hospital may refuse to provide the medication because of a religious policy objecting to terminating pregnancies, and instead—against her wishes—it may counsel her on adoption or social services available to pregnant teens.

### 3.  Impact on state health care institutions

106.  "As a proprietor, [a state] is likely to have the same interests as other similarly situated proprietors . . . , [a]nd like other such proprietors it may at times

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

45

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   need to pursue those interests in court." *Snapp*, 458 U.S. at 601–02. Washington

2   operates numerous health care entities covered by the Final Rule. Consistent with

3   state law and standards of medical ethics, Washington health care entities

4   prioritize patient care and prohibit discrimination of care. By imposing an

5   absolute duty on health care providers to accommodate the religious objections

6   of any employee to providing any service to any patient—no matter the burden it

7   imposes on the provider, other employees, or the patient—the Final Rule invites

8   and sanctions discrimination against patients based on protected characteristics

9   such as sexual orientation or gender identity.

10              **4.      Financial injury to Washington**

11              107.   "It is a bedrock proposition that 'a relatively small economic loss—

12   even an identifiable trifle—is enough to confer standing.'" *Massachusetts v. U.S.*

13   *Dep't of Health & Human Servs.*, No. 18-1514, 2019 WL 1950427, at *9 (1st

14   Cir. May 2, 2019) (quoting *Katz v. Pershing, LLC*, 672 F.3d 64, 76 (1st Cir.

15   2012)). Washington faces far more than a small economic loss from the

16   enforcement and penalty provisions of the Final Rule, which place at risk,

17   alternatively, all "Federal financial assistance or other federal funds, in whole or

18   in part," Final Rule § 88.7(i)(3)(i), or "Federal financial assistance or other

19   federal funds from the Department [of Health and Human Services], in whole or

20   in part," Final Rule § 88.7(i)(3)(ii), (iv), and (v).

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

46

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    108.    Based on information maintained by the Washington Office of

2    Financial Management, in 2018 Washington received over $10.5 billion annually

3    in financial assistance of other federal funds from HHS. The enforcement

4    provisions of the Final Rule allow HHS to withhold, deny, suspend, or terminate

5    billions of dollars in federal health care funds to Washington in HHS's discretion.

6    According to publicly available information on HHS's Tracking Accountability

7    in Government Grants System (TAGGS), Washington received over $8.9 billion

8    in federal funding from HHS in the 2018 federal fiscal year for entities identified

9    as being at the state level in the TAGGS system. The Final Rule threatens this

10    funding should HHS determine, in its discretion, that Washington or any of it

11    subrecipients is not complying with the Final Rule or any of the statutes it

12    implements. Specifically, in fiscal year 2018, this money included:

13            a.    $8.2 billion in funding for Washington's Medicaid and

14    Children's Health Insurance Program.

15            b.    Over $64 million in funding to the Washington Department

16    of Health for a variety of programs and assistance including Title X,

17    Medicare Entitlement for Washington Health, TB Elimination and

18    Laboratory Cooperative Agreements, Universal Newborn Hearing

19    Screening, Maternal and Child Health Services, Washington State

20    Department of Health Integrated HIV Surveillance and Prevention

21    Programs, Hospital Preparedness Programs, and many others.

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

47

1          c.      Over $108 million in funding to the Washington Health Care

2      Authority for a variety of programs including Block Grants for Mental

3      Health Services, Substance Abuse Prevention and Treatment Block

4      Grants, Opioid Response Grants, and many others.

5          d.      Several million dollars in funding to the Washington

6      Department of Social and Health Services for a variety of programs

7      including Refugee Cash and Medical Assistance, Refugee Social Services,

8      employment services to individuals suffering severe mental illness and co-

9      occurring substance disorders through the Becoming Employed Starts

10     Today program, and many others.

11     109.   In addition to the denial of federal funds, the Final Rule will impose

12     other direct costs on Washington. The Final Rule gives HHS authority to

13     financially penalize Washington if a subrecipient of federal funds violates the

14     Final Rule. Final Rule § 88.6(a). As a result, Washington will be required to

15     expend added funds, staffing, and other resources to review and monitor

16     subrecipients' policies, compliance, and complaints regarding refusal rights. For

17     example, the Washington Department of Health (DOH) administers and co-funds

18     with HHS a family planning program comprised of eighty-five clinics providing

19     free or low-cost contraceptives and other reproductive health services to

20     low-income people in thirty-two of Washington's thirty-nine counties. This

21     network of clinics is operated by subrecipients that DOH compensates in part

22

COMPLAINT FOR                          48          ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                         Complex Litigation Division
INJUNCTIVE RELIEF                                      800 Fifth Avenue. Suite 2000
                                                       Seattle, WA  98104-3188
                                                            (206) 464-7744

with funds from HHS's Title X grant to the State. The Final Rule will require DOH's Family Planning Program to expend additional staff, resources, and funds on monitoring and ensuring compliance with the absolute refusal rights the Final Rule purports to create for its Title X family planning provider subgrantees.

## V.    CLAIMS FOR RELIEF

### Count I
### Violation of the Administrative Procedure Act
### Agency Action Not in Accordance with Law—Claimed HHS Authority

110.    Washington realleges and reincorporates by reference the allegations set forth in each of the preceding paragraphs.

111.    The APA requires that agency action that is "not in accordance with law" be held unlawful and set aside. 5 U.S.C. § 706(2).

112.    The Final Rule violates the statutes HHS purports to interpret by adopting constructions of them not intended or authorized by Congress. HHS's unlawfully broad interpretations of these statutes include making the refusal rights of individuals and institutions absolute and categorical; broadly allowing providers to refuse to engage in health care counseling; applying its provisions not just to health care professionals but to any employee; applying its provisions to non-health care providers such as insurance companies and non-health employers; and imposing on Washington the responsibility to police the compliance with the rule of its subrecipients of federal funds.

113.    In addition, the Final Rule purports to create a mechanism that would allow HHS to impose financial penalties on Washington unauthorized by

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

49

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   the statutes HHS invokes. The Final Rule's enforcement scheme would permit

2   HHS to withhold or deny Washington federal funding amounting to billions of

3   dollars if OCR determines that it or one of its subrecipients failed to comply with

4   the Final Rule.

5       114.   Absent injunctive and declaratory relief vacating the Final Rule and

6   prohibiting it from going into effect, Washington and its residents will be

7   immediately, continuously, and irreparably harmed by Defendants' illegal

8   actions.

### Count II
### Violation of the Administrative Procedure Act
### Agency Action Not in Accordance with Law—Other Federal Laws

9

10      115.   The State realleges and reincorporates by reference the allegations

11  set forth in each of the preceding paragraphs.

12      116.   The APA requires that agency action that is "not in accordance with

13  law" be held unlawful and set aside. 5 U.S.C. § 706(2).

14      117.   Section 1554 of the ACA provides that the HHS Secretary "shall not

15  promulgate any regulation" that "creates any unreasonable barriers to the ability

16  of individuals to obtain appropriate medical care"; "impedes timely access to

17  health care services"; "interferes with communications regarding a full range of

18  treatment options between the patient and the provider"; "restricts the ability of

19  health care providers to provide full disclosure of all relevant information to

20  patients making health care decisions"; or "violates the principles of informed

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

50

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    consent and the ethical standards of health care professionals." 42 U.S.C.

2    § 18114.

3    118.   The Final Rule violates Section 1554 in numerous ways, including,

4    among other ways, by creating "unreasonable barriers to the ability of individuals

5    to obtain appropriate medical care" through the denial of counseling and referrals

6    and sanctioning delays and denials of medically indicated care; "impeding timely

7    access to health care services" by permitting delays in and denials of care

8    required by applicable medical standards; "interfer[ing] with communications

9    regarding a full range of treatment options between the patient and the provider"

10   by unlawfully authorizing the denial of counseling and referrals; "restrict[ing] the

11   ability of health care providers to provide full disclosure of all relevant

12   information to patients making health care decisions"; and "violat[ing] the

13   principles of informed consent and the ethical standards of health care

14   professionals" by permitting medical professionals to withhold medically

15   relevant information and violate medical ethical standards and other duties to

16   their patients recognized by leading medical authorities. 42 U.S.C. § 18114.

17   119.   The Final Rule violates the contraceptive coverage requirement in

18   the ACA, 42 U.S.C. § 300gg-13(a)(4), with regard to non-exempt employers with

19   religious beliefs that conflict with the use of contraceptives, by creating an

20   absolute refusal right that conflicts with the accommodation created by HHS's

21   own regulations.

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

51

120.    The Final Rule violates EMTALA by allowing hospitals to assert a categorical objection to providing patients requiring certain services with a medical screening examination and, if the patient has an "emergency medical condition," stabilizing treatment or providing an appropriate transfer. 42 U.S.C. § 1395dd; 42 C.F.R § 489.24.

121.    The Final Rule violates the Non-Directive Mandate in annual appropriations acts applicable to HHS requiring that all pregnancy counseling within a Title X program be nondirective. *See* Pub. L. No. 115-245 (Sept. 28, 2018). The Final Rule violates the Non-Directive Mandate by purporting to permit objecting providers in Washington to refuse to ensure that patients determined to be pregnant receive information on all available options without promoting, advocating, or encouraging one option over another.

122.    The Final Rule violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j), by eliminating the "undue hardship" exception for employers who are required to accommodate employees' religious beliefs and avoid discrimination in employment based on religion.

123.    Absent injunctive and declaratory relief vacating the Final Rule and prohibiting it from going into effect, Washington and its residents will be immediately, continuously, and irreparably harmed by Defendants' illegal actions.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

52

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1
2

**Count III**
**Violation of the Administrative Procedure Act**
**Arbitrary and Capricious Agency Action**

3      124.   The State realleges and reincorporates by reference the allegations

4    set forth in each of the preceding paragraphs.

5      125.   The Final Rule is arbitrary and capricious in numerous respects. It

6    reverses the Department's longstanding policies and interpretations of Title X

7    with no evidentiary basis or cogent rationale, requires deviation from

8    evidence-backed standards of care and medical ethical and fiduciary obligations,

9    needlessly jeopardizes patients' lives, health, and well-being, disregards and/or

10   is contrary to evidence before the agency, ignores many important aspects of the

11   problem and the significant new problems it will create, relies on factors

12   Congress did not intend the agency to consider, and is illogical and

13   counterproductive.

14     126.   One or more of these problems affects virtually every new provision

15   of the Final Rule, rendering the Final Rule arbitrary and capricious in its entirety.

16     127.   Absent injunctive and declaratory relief vacating the Final Rule and

17   prohibiting it from going into effect, Washington and its residents will be

18   immediately, continuously, and irreparably harmed by Defendants' illegal

19   actions.

20

**Count IV**
**Violation of the Spending Clause**

21     128.   The State realleges and reincorporates by reference the allegations

22   set forth in each of the preceding paragraphs.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

53

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

129.   Article I, section 8, clause 1 of the United States Constitution, also known as the Spending Clause, states that "Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States."

130.   The Final Rule violates the Spending Clause because the restrictions are unconstitutionally coercive, do not provide the State with adequate notice of what action or conduct will result in a withholding of federal health care funds, and impose sanctions that are not rationally related to the underlying federal programs.

131.   When conditions on the payment to state or local governments of specific federal funds "take the form of threats to terminate other significant independent grants, the conditions are properly viewed as a means of pressuring the States to accept policy changes." *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580 (2012). Here, the Final Rule threatens to terminate or withhold billions of dollars of healthcare federal funding that the State would otherwise receive, and in so doing, imposes conditions that "cross[] the line distinguishing encouragement from coercion." *Id.* at 579. The Department's threat to withhold or deny billions of dollars of healthcare funds, including funds unrelated to healthcare, is "much more than 'relatively mild encouragement'—it is a gun to the head." *Id.* at 581. A threat of this magnitude leaves the State "with no real option but to acquiesce" to the federal requirement. *Id.* at 582.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

54

132.   If Congress intends to condition a State's receipt of federal funds, it must do so unambiguously so that the State can exercise its choice knowingly and voluntarily. *South Dakota v. Dole*, 483 U.S. 203, 207 (1987). Among other things, the Final Rule uses terms that are vague, defines terms inconsistently with the underlying federal statutes or long-standing usage, imposes new conditions on the receipt of federal funds, and does not adequately describe the actions that will lead to sanctions. The Final Rule is ambiguous and therefore unconstitutional.

133.   Federal funding conditions must also be rationally related to the federal interest in the particular program that receives federal funds. The Final Rule is unconstitutional under the Spending Clause because it places conditions on the receipt of federal funds that are not "[]related to the federal interest in particular national projects or programs" paid for by those funds. *Id.* at 207.

134.   Absent injunctive and declaratory relief vacating the Final Rule and prohibiting it from going into effect, Washington and its residents will be immediately, continuously, and irreparably harmed by Defendants' illegal actions.

**Count VI**
**Separation of Powers**

135.   The State realleges and reincorporates by reference the allegations set forth in each of the preceding paragraphs.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

55

136.    The United States Constitution exclusively grants the spending power to Congress. U.S. Const. art. 1, § 8, cl. 1. Congress may delegate some discretion to the Executive Branch, but the Executive Branch is not allowed to amend or cancel Congressional appropriations.

137.    The Final Rule permits Defendants to refuse to disburse money appropriated by Congress, thereby violating constitutional separation of powers principles.

138.    Absent injunctive and declaratory relief vacating the Final Rule and prohibiting it from going into effect, Washington and its residents will be immediately, continuously, and irreparably harmed by Defendants' illegal actions.

**Count VII**
**Violation of the Establishment Clause**

139.    The State realleges and reincorporates by reference the allegations set forth in each of the preceding paragraphs.

140.    Under the Establishment Clause of the First Amendment, the "[g]overnment in our democracy, state and national, must be neutral in matters of religio[n]." *Epperson v. Arkansas*, 393 U.S. 97, 103 (1968). The government "may not aid, foster, or promote one religion or religious theory against another," *id.*, nor "religion over irreligion," *McCreary Cty. v. ACLU of Kentucky*, 545 U.S. 844, 875 (2005). "When the government acts with the ostensible and predominant purpose of advancing religion, it violates that central Establishment

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

56

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Clause value of official religious neutrality . . . ." *Id.* at 860. The government also

2    violates the Establishment Clause where it imposes an "absolute duty" on

3    employers to "conform their business practices to the particular religious

4    practices of [an] employee," such that "religious concerns automatically control

5    over all secular interests at the workplace." *Estate of Thornton v. Caldor, Inc.*,

6    472 U.S. 703, 709 (1985).

7        141.   The Final Rule has the predominant purpose and effect of

8    advancing, endorsing, and elevating individual health care workers' religious

9    beliefs above all other interests—including patients' health, welfare, and choices

10   (whether religious or secular). In doing so, the Final Rule imposes an absolute

11   duty on medical providers—including state-operated entities—to accommodate

12   employees' asserted religious beliefs no matter what burdens doing so would

13   impose on the providers, other employees, or patients. In promulgating the Final

14   Rule, HHS has put its thumb on the scale to favor some religious beliefs over

15   other beliefs, telling "nonadherents 'that they are outsiders, not full members of

16   the political community, and . . . adherents that they are insiders, favored

17   members of the political community.'" *Santa Fe Indep. Sch. Dist. v. Doe*,

18   530 U.S. 290, 309–10 (2000).

19       142.   The Final Rule violates the Establishment Clause, causing harm to

20   Washington's sovereign and proprietary interests, and to its residents.

21

22

COMPLAINT FOR                              57        ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                         Complex Litigation Division
INJUNCTIVE RELIEF                                       800 Fifth Avenue, Suite 2000
                                                        Seattle, WA  98104-3188
                                                        (206) 464-7744

1    **VI.    PRAYER FOR RELIEF**

2    Wherefore, the State of Washington prays that the Court:

3    a.    Declare that the Final Rule is unauthorized by and contrary to the

4    Constitution and laws of the United States;

5    b.    Declare that the Final Rule is invalid and without force of law and

6    vacate the Final Rule in full;

7    c.    Issue preliminary and permanent injunctions prohibiting Defendants

8    from implementing or enforcing the Final Rule;

9    d.    Award the State of Washington its costs and reasonable attorneys'

10    fees; and

11    e.    Award such other and further relief as the interests of justice may

12    require.

13

14

15

16

17

18

19

20

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

58

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1        RESPECTFULLY SUBMITTED this 28th day of May 2019.

2                              ROBERT W. FERGUSON
                             Attorney General
3

4

5                              _____
                             JEFFREY T. SPRUNG, WSBA #23607
6                              MARTHA RODRIGUEZ LÓPEZ, WSBA #35466
                             ZACHARY P. JONES, WSBA #44557
7                              JEFFREY C. GRANT, WSBA #11046
                             R. JULY SIMPSON, WSBA #45869
8                              Assistant Attorneys General
                             Office of the Attorney General
9                              800 Fifth Avenue, Suite 2000
                             Seattle, WA  98104
10                             (206) 464-7744
                             Jeff.Sprung@atg.wa.gov
11                             Martha.RodriguezLopez@atg.wa.gov
                             Zach.Jones@atg.wa.gov
12                             Jeffrey.Grant@atg.wa.gov
                             July.Simpson@atg.wa.gov
13                             *Attorneys for Plaintiff State of Washington*

14

15

16

17

18

19

20

21

22

COMPLAINT FOR                           59                ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                               Complex Litigation Division
INJUNCTIVE RELIEF                                                7141 Cleanwater Drive SW
                                                                    PO Box 40111
                                                               Olympia, WA 98504-0111
                                                                   (360) 709-6470